FILED
JUL 26 2016
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>TRACIE DICKEY, also known as )<br>Tracie Williams ) | Violations: Title 18, United States Code, Sections 1343 and 1589<br><br>**16 CR 475**<br><br>**JUDGE THARP**<br>**MAGISTRATE JUDGE FINNEGAN** |

### COUNT ONE

The SPECIAL JUNE 2015 GRAND JURY charges:

1. At times material to this indictment:

   a. Hotel chains maintained arrangements with travel agents whereby the hotel chains paid a commission fee if a travel agent arranged for an individual to stay at one of the chain's hotels.

   b. For example, Hyatt Hotels Corporation, which was headquartered in Chicago, Illinois, paid commissions to travel agents who booked stays for customers at their various hotels. Hyatt maintained an electronic database that was accessible from its headquarters in Chicago, Illinois, in which it electronically stored information pertaining to commissions requested for travel agents.

   c. Employees working at Hyatt had access to its travel agent commission database. When a travel agent booked a stay at a Hyatt hotel, the employee entered the travel agent's identifier into the database along with the

reservation. That information was then submitted to Hyatt headquarters, where it was reviewed and approved. Once a request for commission payment was approved, a wire signal was sent from the database system authorizing payment to the travel agent or agency for the particular reservation. Payment was then electronically transferred to the bank account associated with the travel agent or agency in the database.

    d.  Defendant purported to operate a travel agency, known as World Ambassador Travel. Commission fees for hotel reservations purportedly booked by World Ambassador Travel were paid by hotels to a bank account maintained by defendant in the name of World Ambassador Travel at Wells Fargo. In some instances, those commission fees were processed through a third-party travel agency, Thomas Hogan, before being paid to defendant through the World Ambassador Travel account at Wells Fargo.

    e.  Defendant was also the self-appointed "Bishop" of Deliverance Tabernacle Ministries, an organization which she proclaimed offered faith-based service to members in locations such as Pittsburgh, Pennsylvania, and Orlando, Florida. Defendant recruited and caused others to recruit individuals to join Deliverance Tabernacle Ministries, and controlled its finances. For example, defendant was the sole signatory for the organization's bank accounts.

2. Beginning no later than in or around 2005, and through in or about February 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TRACIE DICKEY, also known as
Tracie Williams,

defendant herein, knowingly devised, intended to devise, and participated in a scheme to defraud, and to obtain money and other property by means of materially false and fraudulent pretenses, representations, and promises, as further described below.

3. It was part of the scheme that defendant recruited young women to become members of the Deliverance Tabernacle Ministries, directed members to obtain employment at hotels, fraudulently directed them to cause the hotels to pay reservation commissions to World Ambassador Travel which it had not earned, and directed the members to remit their own wages to bank accounts which she controlled.

4. It was further part of the scheme that after defendant recruited individuals to join Deliverance Tabernacle Ministries, she required that they follow guidelines and rules that she established, including that the members live together and cut off ties with their family members.

5. It was further part of the scheme that defendant required Deliverance Tabernacle Ministries members to work multiple jobs and required members to remit or "tithe" all or almost all of their earnings to Deliverance Tabernacle Ministries.

6. It was further part of the scheme that defendant emotionally and physically abused the members of Deliverance Tabernacle Ministries in order to coerce them to follow its rules and her orders, and to remit their earnings. Defendant's tactics included the following:

a. informing the members that God would strike them down if they did not tithe their earnings to Deliverance Tabernacle Ministries and threatening members that God would harm their family members;

b. physically abusing the members, including by punching, kicking, and pulling their hair;

c. kicking the members out of their residence and forcing them to live on the streets;

d. starving the members; and

e. publicly shaming and humiliating the members for failing to abide by the Deliverance Tabernacle Ministries's rules and guidelines.

7. It was further part of the scheme that, beginning in approximately 2005, defendant required certain Deliverance Tabernacle Ministries members, namely, Victims A, B, C and D, to obtain employment at large hotel chains as front desk clerks.

8. It was further part of the scheme that defendant instructed Victims A, B, C and D to fraudulently cause the hotel chains to pay commissions to World Ambassador Travel for reservations at the hotel chains that were not booked by defendant or World Ambassador Travel.

9. It was further part of the scheme that defendant directed Victim B to maintain a spreadsheet which compiled the number and amount of fraudulent commission fees that Victims A, B, C and D caused the hotel chains to pay to bank accounts controlled by defendant.

10. It was further part of the scheme that defendant fraudulently obtained approximately $130,000 from hotel chains by requiring Victims A, B, C and D to credit World Ambassador Travel with reservation commissions that were not actually earned by defendant or World Ambassador Travel.

11. It was further part of the scheme that defendant directed Victims A, B, C and D to have their hotel wages directly deposited into either defendant's personal bank account or one of the Deliverance Tabernacle Ministries bank accounts, which defendant controlled.

12. It was further part of the scheme that defendant fraudulently obtained approximately $280,000 in wages earned by Victims A, B, C and D that were directly deposited into accounts controlled by defendant.

13. It was further part of the scheme that defendant concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence of the scheme, the purposes of the scheme, and the acts done in furtherance of the scheme.

14. On or about January 11, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

> TRACIE DICKEY, also known as
> Tracie Williams,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain signs, sounds and signals, namely, a wire transmitted from a server in Chicago, Illinois, to a server located in Herndon, Virginia, resulting in the deposit of $4,124.69, into a Wells Fargo Bank account;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL JUNE 2015 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 13 of Count 1 are incorporated here.

2. On or about January 18, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TRACIE DICKEY, also known as
Tracie Williams,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain signs, sounds and signals, namely, a wire transmitted from a server in Chicago, Illinois, to a server located in Herndon, Virginia, resulting in the deposit of $1,179.31, into a Wells Fargo Bank account;

In violation of Title 18, United States Code, Section 1343.

## **COUNT THREE**

The SPECIAL JUNE 2015 GRAND JURY further charges:

1. The allegations in paragraphs 1 through 13 of Count 1 are incorporated here.

2. On or about February 8, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TRACIE DICKEY, also known as
Tracie Williams,

defendant herein, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of a wire communication in interstate commerce, certain signs, sounds and signals, namely, a wire transmitted from a server in Chicago, Illinois, to a server located in Herndon, Virginia, resulting in the deposit of $2,503.11, into a Wells Fargo Bank account;

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

The SPECIAL JUNE 2015 GRAND JURY further charges:

Between in or around 2005, and continuing until in or around July 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

TRACIE DICKEY, also known as
Tracie Williams,

defendant herein, did knowingly provide and obtain the labor and services of Victim B, by means of: (a) threats of serious harm, and threats of physical restraint; (b) a scheme, plan, and pattern intended to cause Victim B to believe that, if Victim B did not perform such labor and services, that Victim B would suffer serious harm and physical restraint; and (c) abuse and threatened abuse of the law and legal process;

In violation of Title 18, United States Code, Section 1589.

## FORFEITURE ALLEGATION

The SPECIAL JUNE 2015 GRAND JURY alleges:

1. The allegations of Counts One through Four of this Indictment are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(2).

2. As a result of her violations of Title 18, United States Code, Sections 1343 and 1589, as alleged in Counts One through Four of the foregoing Indictment,

>TRACIE DICKEY, also known as
>Tracie Williams,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all right, title and interest she may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3. The interest of the defendants subject to forfeiture as the result of their violations of Title 18, United States Code, Sections 1343 and 1589 includes, but is not limited to, approximately $410,000.

4. If any of the property described above, as a result of any act or omission of the defendant:

  a.  Cannot be located upon the exercise of due diligence;

  b.  Has been transferred or sold to, or deposited with, a third person;

  c.  Has been placed beyond the jurisdiction of the Court;

  d.  Has been substantially diminished in value; or

  e.  Has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of the defendants up to the value of the forfeitable property.

All pursuant to Title 18, United States Code, Section 982(a)(2).

A TRUE BILL

_____
FOREPERSON

_____
UNITED STATES ATTORNEY