UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No.   16 CR 475 |
| v. | ) | |
| | ) | Judge Sara Ellis |
| TRACIE DICKEY | ) | |

## GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE*

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully asks this Court to grant the following motions *in limine*.

## BACKGROUND

Defendant Tracie Dickey is charged in a four-count indictment with three counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1-3) and one count of labor trafficking, in violation of 18 U.S.C. § 1589 (Count 4).

More specifically, the government alleges that defendant, the self-appointed Bishop of a church she founded, used her position to abuse, threaten, and manipulate members of her church to commit wire fraud on her behalf.  Defendant founded a church – Deliverance Tabernacle Ministries International – through which she engaged in ministry services.  As part of that service, defendant recruited many young women, each of whom was looking for a church and, more specifically, a group within which to belong.

Once the victims joined defendant's church, defendant exploited her position as leader of the church, using the victims' vulnerabilities to manipulate them into

believing that if they did not devote themselves entirely to the church, they and their family members would be stricken down by God. When defendant first recruited members into her church, she used promises of love and comfort to endear herself to the victims. From there, defendant required that the victims cease communicating with their family members, work long hours, and tithe or donate all of their earnings to the church. Defendant was abusive with the victims when she viewed them as being out of line. When the victims did not do what defendant wanted, she kicked them out of their shared apartments, leaving them homeless and penniless. Defendant also continued to threaten God's wrath if the victims did not do as told, which included donating their salaries to the church.

In addition to robbing the victims of their earnings, defendant created a scheme by which she required the victims to get jobs working at the front desk at hotel chains. As part of their responsibilities as front desk clerks, the victims answered calls into the hotel from individuals requesting a reservation. Most often, these calls were made by individuals on their own behalf, but there were times when calls were made by travel agents on behalf of another individual, in which case the front desk clerk would note the travel agency had made the reservation and the travel agency would then be paid by the hotel. Defendant exploited the victims' access to the hotels' reservation system by creating two fake travel agencies – World Ambassador Travel and an independent contractor of Thomas Hogan Travel. As part of her scheme, defendant required the victims to fraudulently credit her two

"travel agencies" with having coordinated reservations when, in fact, the travel agencies had done no such thing.

Trial is scheduled for April 23, 2018.

## ARGUMENT

### I. Motion to Admit Business Records with 902(11) Certifications

Among other exhibits, the government intends to introduce a number of business records through certifications, pursuant to Federal Rule of Evidence 902(11). Most of the records at issue are business records of banks, credit card companies, and hotels. The bank records are for defendant's personal bank accounts, as well as the accounts used by Deliverance Tabernacle Ministries. The records show deposits into the accounts defendant controlled from the places where the victims worked, as well as the money deposited into the accounts as a result of the fraudulent reservation credits. The bank records also show how that money (the victims' salaries and fraud money) was used – by the defendant and for her benefit. The credit card records are records of defendant's own credit cards. The records show how defendant was spending the money she received from the victims and the hotels – on herself. The hotel records show applications submitted by the victims; direct deposit forms completed by defendant instructing the hotels to deposit the entirety of the victims' paychecks into defendant's accounts; and the fraudulent reservations made by the victims and the subsequent payments into defendant's accounts.

3

The government will provide and admit into evidence signed certifications, attesting to the accuracy and authenticity of the business records as summarized in the chart below. All of the records have been previously produced to the defendant in discovery on compact disc. The Government anticipates introducing the records in electronic format at trial:

| Exhibit | Record Descriptions |
|---|---|
| Starwood Employment File | Application and employment file, including payment information, for Victim A |
| Hilton Employment File | Application and employment file, including payment information for and reservations made by Victim A |
| Marriott Employment File | Application and employment file, including payment information, for Victim A |
| Carlson Employment File | Application and employment file, including payment information, for Victim A |
| Government Group Exhibits acm5atd@aol.com; ssworshiper7@aol.com; deltabmin@aol.com; dtmi3@aol.com | AOL subscriber information and emails for the listed accounts, obtained by search warrant[1] |
| Government Exhibit Citizens Bank Records 1 | Bank records for Deliverance Tabernacle Ministries |
| Government Exhibit Bank of America Bank Records 1 | Bank records for Deliverance Tabernacle Ministries |

---

[1] The AOL certification will apply only to the business record foundation for the records themselves. The content of the emails are separately admissible as admissions by the defendant. Fed. R. Evid. 801(d)(1).

| | |
|---|---|
| Government Exhibit Citizens Bank Records 2 | Bank records for Tracie Dickey |
| Government Exhibit PNC Bank Records | Bank records for Tracie Dickey |
| Government Exhibit Wells Fargo Bank Records | Bank records for Tracie Dickey |
| Government Exhibit Chase Bank Records | Bank records for Victim B |

The business records that the government intends to introduce at trial are admissible pursuant to Federal Rules of Evidence 803(6) and 902(11), and therefore do not require live witness testimony from records custodians. The government hereby moves the Court to find, pursuant to Federal Rule of Evidence 104, that the records at issue are authentic business records within the meaning of Federal Rule of Evidence 803(6).

Federal Rule of Evidence 104 authorizes the Court to determine in advance of trial "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence." This rule applies to all preliminary determinations, including the question whether documents fall within the "business records exception" to the hearsay rule. *See United States v. Kasvin*, 757 F.2d 887, 893 (7th Cir. 1985) (affirming trial court's preliminary determination pursuant to Rule 104 that business records were admissible pursuant to Rule 803(6)).

The records that the government intends to offer at trial fall within the business records exception to the hearsay rule. Fed. R. Evid. 803(6). Rule 803(6) provides that such records are admissible, notwithstanding the hearsay rule, provided they were:

> made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, *or by certification that complies with Rule 902(11)* . . . , unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

6

Fed. R. Evid. 803(6) (emphasis added). In other words, the authenticity of business records may be established either through live testimony of a custodian of records, or by a certification that complies with Rule 902(11).

Rule 902(11) provides that:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to . . . [t]he original or duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record--
>
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
>
> (B) was kept in the course of the regularly conducted activity; and
>
> (C) was made by the regularly conducted activity as a regular practice.
>
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Fed. R. Evid. 902(11). The Seventh Circuit has recognized the efficiency of the introduction of business records through 902(11) certifications, *see United States v. Green*, 648 F.3d 569, 580 (7th Cir. 2011), and affirmed the use of 902(11) certifications when the foundational requirements of Rule 803(6) are met, *see, e.g., United States v. Klinzing*, 315 F.3d 803, 809-10 (7th Cir. 2003) (affirming trial court's admission of some documents, specifically defendant's W-2 wage statements, through 902(11)

certifications and denying defendant's argument that Rule 803(6) violated his Sixth Amendment right to confront witnesses).

Here, as authorized by Rule 803(6), the government has established the authenticity of the business records that it intends to introduce, as well as their admissibility under Rule 803(6), through certifications obtained from the custodians of records that comply with Rule 902(11). Moreover, through this pretrial motion, the government complies with Rule 902(11)'s requirement of advance notice to the defense of its intent to introduce these documents pursuant to Rule 902(11) and provides an opportunity for inspection of the records and declarations. Indeed, the government has tendered all of the records in its possession that it intends to introduce pursuant to Rule 902(11).

Admission of these documents through 902(11) certification will save the parties, the Court, and the jury members significant time and resources, as the certifications will obviate the need for live witness testimony from at least eleven different custodians of records. It will also save considerable time and resources for the witnesses. Many of these witnesses must travel to Chicago from out-of-state, and their testimony would be limited solely to stating that these documents are inherently reliable as records of regularly conducted activity—a fact that each of them has already certified to be true under penalty of perjury.

II. Motion to Preclude Evidence of Witness's Arrests, Misdemeanor Convictions, and Other "Bad Acts" Not Involving Dishonesty

The government will disclose criminal history information for each of its witnesses, as well as any "bad acts," not resulting in conviction, by government witnesses. Under Rule 608(b) defendant is permitted to inquire into specific bad acts of a witness only if these acts are probative of truthfulness. Fed.R.Evid. 608(b); *see also, e.g., United States v. Van Dorn*, 925 F.2d 1331 (11th Cir. 1991) (threats made by witness to judicial officers in a prior drug prosecution not relevant to a witness's truthfulness); *United States v. McNull*, 887 F.2d 448 (3d Cir. 1989) (solicitation to commit crime of violence is not probative of truthfulness); *United States v. Bentley*, 706 F.2d 1498, 1509-10 (8th Cir. 1983) (evidence of witness's involvement in drug operation not proper impeachment under Rule 608(b)); *United States v. Fortes*, 619 F.2d 108, 117-18 (1st Cir. 1980) (affirming trial court's refusal to allow cross-examination concerning witness's involvement in sale of cocaine on ground that selling cocaine is not probative of truthfulness or untruthfulness under Rule 608(b)); *United States v. Young*, 567 F.2d 799, 803 (8th Cir. 1977) (disallowing cross-examination of government witness concerning her alleged offer to pay $10,000 to have her husband killed, because "the proposed question was not relevant to veracity and honesty and would have been highly prejudicial").

As for arrests not resulting in conviction, courts have construed Rule 608(b) to prohibit cross-examination about prior arrests absent special facts bearing on the witness's character for the specific trait of truthfulness. Thus, in *United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980), the Eighth Circuit held that a witness may not

be cross-examined about an arrest except where Rule 608(b) would permit inquiry into specific acts leading up to the arrest that related to crimes of falsity, for example, perjury, subornation of perjury, or false pretenses. *Id.* at 798-99; *accord United States v. Sellers*, 906 F.2d 597, 603 (11th Cir. 1990).

In this case, many of the witnesses who will testify at trial were long-time friends, associates or employees of defendant. The government anticipates that, given this relationship, defendant may know – or have a basis to believe – that witnesses have engaged in conduct that would cast the witness in a potentially negative light. This is true in any situation where individuals have known each other for a long time – they are aware of many things that an individual has done that are in no way relevant to that individual's truthfulness.

So that the Court can make the appropriate rulings, before a witness testifies, and outside the presence of the jury, the government requests that defense counsel identify any prior "bad acts" about which they intend to cross-examine a given witness, and demonstrate how that conduct is probative of truthfulness.

### III. Motion to Preclude Evidence and Argument Designed to Elicit Jury Nullification

The Court should preclude defendant from making arguments, admitting evidence, or framing questions in the presence of the jury that are designed to induce jury nullification. It is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. "An unreasonable jury verdict, although unreviewable if it is an acquittal,

is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant." *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996). The government moves to exclude the following specific examples of jury nullification, among others.

### A. Prosecutorial Charging Decisions

The government expects the evidence at trial to establish that there were other individuals involved in defendant's church. Those individuals were not charged in this case. At trial, the Court should preclude the defendant from presenting any argument or evidence regarding the government's charging decisions in this case. This includes arguments related to selective prosecution, inquiries into why the government did or did not charge particular individuals, and argument that the government should have charged different and/or more people.

Evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus should be excluded from trial. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"); *United States v. Berrigan*, 482 F.2d 171, 174-76 (3d Cir. 1973) (affirming exclusion of evidence relating to "discriminatory prosecution"). It is settled law that questions about the subjective intentions or motivations of a government agent are irrelevant to determining whether a defendant is guilty or innocent. *See, e.g., United States v. Goulding*, 26

F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"). The Court should exclude evidence about the prosecutorial or investigational motive for investigating and charging this case.

B. Outrageous Government Conduct

"[T]he defense of outrageous government conduct does not exist in this circuit." *United States v. Sherman*, 268 F.3d 539, 549 (7th Cir. 2001); *see also United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995) (collecting cases). Accordingly, the Court should preclude defendants from attempting to defend this case by attacking the propriety of the government's investigation, and in particular, from making any allegations of outrageous government conduct in the jury's presence.

C. Allegations That the Investigation or Prosecution Was Racially Motivated.

Similarly, defendant should be prevented from advancing forms of argument or questioning designed to interject issues of race into this trial. Permitting unsupported and improper argument or questioning of this nature in the presence of the jury risks irreparable prejudice and confusion of the matters at issue. Courts have long noted that "[a]ppeals to racial passion can distort the search for truth and drastically affect a juror's impartiality." *United States v. Doe*, 903 F.2d 16, 25 (D.C. Cir. 1990). Not only is there no evidentiary basis for interjecting into this trial allegations of racial animus, but the law is well-settled that claims of selective

prosecution are to be resolved by the court and not the jury. *United States v. Jones*, 52 F.3d 924, 927 (11th Cir. 1995); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983).

### D. Penalties

"It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975)). For this reason the Seventh Circuit has unequivocally held that "arguing punishment to a jury is taboo." *United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997) (overturned on other grounds by *Richardson v. United States.*, 526 U.S. 813 (1999)). Accordingly, defense counsel should be precluded from mentioning or introducing evidence about any of the range of penalties defendants may face if convicted, including the possibility of imprisonment, not just the possible length of imprisonment.

## IV. Motion to Preclude Comments About Discovery

The Court should preclude defendant from requesting discovery from witnesses or the government, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury. Such requests from counsel in front of the jury are inappropriate and may create the false impression that the government has suppressed information as a means of seeking an unfair advantage. These requests can easily be made to the Court or the government

13

outside the presence of the jury with no prejudice resulting to either side. This system has been used in other cases and has worked well. *See generally Thompson v. Glenmede Trust Co.*, 1996 WL 529693 (E.D.Pa. 1996); *United States v. Gray*, 2010 WL 1258169, *2-3 (N.D. In. March 26, 2010).

V. **Motion to Admit Summary Chart Evidence of Voluminous Records under Federal Rule of Evidence 1006**

The United States anticipates seeking to admit at trial summary chart exhibits, summarizing voluminous bank records and credit card statements, in order to corroborate witness testimony and provide relevant evidence regarding the defendant's fraud and her trafficking of Victim B. Here, defendant has been charged with a complicated wire fraud scheme, whereby defendant not only required that the victims direct their salaries to the church, but also where she had fraudulent travel reservation credits deposited into her accounts. An analysis of those transactions is necessary to proving the case. In addition, defendant's use of the funds is entirely relevant. The indictment charges that defendant used the funds provided to her by the victims for her own personal use, then and there knowing that the funds were not used for religious purposes. The underlying bank records have been produced in discovery.

The following is a more specific list of the summary charts government intends to introduce the following summary charts. The government has prepared draft charts, but does not attach those as exhibits, given the personal identifying information associated with the records. Instead, the government will provide the

Court and defense counsel with final charts in advance of the pre-trial conference:

- A chart summarizing the sources of funds into defendant's personal accounts.

- A chart summarizing the sources of funds into defendant's business accounts.

- A chart summarizing the uses of funds out of defendant's personal accounts.

- A chart summarizing the uses of funds out of defendant's business accounts.

- A summary chart showing hotel reservation credit deposits into the defendant-controlled accounts.

- Summary charts by victim, showing the total amount of money deposited from victims into the defendant-controlled accounts, broken down by victim employer.

- A chart summarizing the categories of expenditures from defendant's credit card accounts.

Federal Rule of Evidence 1006 provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place. The court may order that they be produced in court.

Given the voluminous bank records, which have been provided to defendant,

Rule 1006 allows the admission of the proposed summary exhibits. Courts have articulated a three-part test to determine when a chart, summary or calculation is admissible. First, the writings, records or photographs at issue must be voluminous. *See United States v. Briscoe*, 896 F.2d 1476, 1495 (7th Cir. 1990) (affirming district court's admission of "cover sheets" as summaries for transcripts of 238 tap recorded telephone conversations pursuant to Rule 1006). Second, the party offering the chart, summary, or calculation must lay a proper foundation for its admission. *Id.; United States v. Driver*, 798 F.2d 248, 252-53 (7th Cir. 1986). Third, the original documents or duplicates must be made available to the opposing party prior to trial. *Coates v. Johnson & Johnson*, 756 F.2d 524 (7th Cir. 1985). The decision to admit or exclude Rule 1006 summaries rests within the sound discretion of the district court. *Briscoe*, 896 F.2d at 1495.

Here, the government has satisfied all the conditions for admitting Rule 1006 summaries. The evidence in question, as detailed above, is indisputably voluminous: thousands of pages of bank records and credit card statements. The government hereby acknowledges its obligation to provide a proper foundation for the admission at trial, and will do so as described above. In addition, the government anticipates calling an FBI forensic accountant who will testify to the accuracy of the summary charts. Finally, copies of the underlying documents have been produced to the defendant. Accordingly, the Court should conditionally admit the summary charts without having to individually introduce and authenticate the voluminous

underlying records, which will save this Court time and conserve judicial resources by expediting the trial. *Cf. Briscoe*, 896 F.2d at 1495 (Rule 1006 does not require that it be "literally impossible to examine all the underlying records, but only that in-court examination would be an inconvenience.") (citation omitted).

## CONCLUSION

For the reasons stated above, the government respectfully asks the Court to grant the government's consolidated motions *in limine*.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: *s/Bethany K. Biesenthal*
BETHANY K. BIESENTHAL
MAUREEN E. MERIN
Assistant United States Attorneys
219 South Dearborn, 5th Floor
Chicago, Illinois 60604
(312) 353-5300
