**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 16 CR 475 |
| | ) | |
| TRACIE DICKEY, also known as Tracie Williams, | ) | Judge Sara L. Ellis |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Government has charged Defendant Tracie Dickey with one count of wire fraud in violation of 18 U.S.C § 1343 and one count of forced labor in violation of 18 U.S.C. § 1589. Dickey moves to dismiss the forced labor charge or in the alternative sever it from the wire fraud count. Because Dickey's motion is untimely without cause and the Government properly charged the forced labor charge, the Court denies Dickey's motion.

## BACKGROUND

According to the indictment, Dickey was the self-appointed Bishop of Deliverance Tabernacle Ministries. Through the organization, Dickey offered "faith-based" services to members in various locations. She controlled Deliverance Tabernacle Ministries' finances, recruited members, and caused others to recruit members. According to the Government, Dickey used her role in this organization to devise and participate in a scheme to defraud hotels.

Hotel chains generally pay travel agents a commission fee if the travel agent arranged for an individual to stay at one of the chain's hotels. The Government uses Hyatt Hotels Corporation ("Hyatt") as an example. When a travel agent books a stay at a Hyatt, a Hyatt employee will enter the travel agent's identifier into Hyatt's travel agent commission database.

Hyatt headquarters then reviews and approves the entries, and Hyatt electronically transfers payment to the travel agent's bank account.

For her scheme, Dickey purported to operate a travel agency called World Ambassador Travel. She directed young women, who were members of Deliverance Tabernacle Ministries, to obtain employment at hotels and pay reservation commissions to World Ambassador Travel that it had not earned. Dickey allegedly obtained approximately $130,000 from hotels through this scheme. In addition, Dickey directed the Deliverance Tabernacle Ministries members to remit their wages from the hotels to Dickey's bank accounts. Dickey allegedly obtained approximately $280,000 in wages earned by four Deliverance Tabernacle Ministries members.

Once an individual joined Deliverance Tabernacle Ministries, Dickey required that person to follow guidelines and rules that she established, including that the members live together and cut off ties with their family members. Dickey allegedly required Deliverance Tabernacle Ministries members to work multiple jobs and to remit most or all of their salaries to Deliverance Tabernacle Ministries. She allegedly emotionally and physically abused members to coerce them into following her orders. The indictment describes abuse including telling members that God would strike them down and threatening that God would harm their family members, physically abusing the members, kicking the members out of their residence, starving the members, and publicly shaming and humiliating the members for failing to adhere to her rules.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 12(b)(3)(B) provides that a criminal defendant may, prior to trial, move to dismiss an indictment or information as defective. In determining whether an indictment is defective, courts first look to the Sixth Amendment to the Constitution, which

sets out that criminal defendants "shall enjoy . . . the right to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. Additionally, Federal Rule of Criminal Procedure 7(c)(1) states that an indictment or information must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

"An indictment is constitutionally sufficient and satisfies Fed. R. Crim. P. 7(c)(1) if it states the elements of the crime charged, informs the defendant of the nature of the charge so she may prepare a defense, and enables the defendant to plead the judgment as a bar against future prosecutions for the same offense." *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997) (citing *Hamling v. United States*, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 590 (1974)). The Supreme Court has long held that "[a]n indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S. Ct. 406, 100 L. Ed. 397 (1956); *see also Kaley v. United States*, 571 U.S. 320, 328, 134 S. Ct. 1090, 188 L. Ed. 2d 46 (2014). A motion to dismiss an indictment does not challenge the strength of the Government's case or the sufficiency of the evidence. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). Rather, when ruling on a motion to dismiss, the Court must determine "whether it's possible to view the conduct alleged" as constituting the crime charged. *Id.* "Indictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (citation omitted) (internal quotation marks omitted).

**ANALYSIS**

As an initial note, Dickey's motion is untimely. Dickey filed this motion less than two weeks prior to trial, two and a half years after her indictment, and over three months after obtaining her most recent (and current) attorney. The Federal Rules of Criminal Procedure provide that "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely," although the Court may still consider the motion if the party shows "good cause." Fed. R. Crim. P. 12(c)(3). In this case, the Court set a deadline for pretrial motions of September 27, 2016. Doc. 18. Dickey did not ask leave to file her pretrial motion more than two years after that deadline, nor did she show good cause (or even mention good cause) in her motion. Thus, her motion is untimely. However, even if the Court considered Dickey's motion on the merits, it would deny the motion for the reasons discussed below.

## I.       Applicability of § 1589

Dickey first argues that the Court should dismiss the forced labor charge on the basis that § 1589 is meant to address transnational crimes, not "a situation like this where adult citizens of the United States, of sound mind and body, educated, and well versed in the English language, are coerced or bullied by their pastor." Doc. 127 ¶ 17.

On issues of statutory construction, the Court must start with the language of the statute, and clear language will end the Court's analysis in almost all cases. *Northcutt v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 467 F.3d 1031, 1035 (7th Cir. 2006) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S. Ct. 2589, 120 L. Ed. 2d 379 (1992)); *see also Carter v. United States*, 530 U.S. 255, 257, 120 S. Ct. 2159, 147 L. Ed. 2d 203 (2000) (finding that "reliance on [the statute's] legislative history is unavailing in light of this Court's approach

to statutory interpretation, which begins by examining the text . . ., not by psycholanalyzing those who enacted it" (citations omitted)).  Looking to § 1589, the law provides:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—
>> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>>
>> (2) by means of serious harm or threats of serious harm to that person or another person;
>>
>> (3) by means of the abuse or threatened abuse of law or legal process; or
>>
>> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished as provided under subsection (d).

18 U.S.C. § 1589(a).

Dickey's argument on this issue relies heavily on Congress' stated purposes and findings regarding the Victims of Trafficking and Violence Protection Act ("TVPA"), of which § 1589 is a part.  *See* 22 U.S.C. § 7101.  However, the Court need not consider those statements, because § 1589 itself is clear.  It contains no limitation that the people who are victims of forced labor be taken across international borders in order for the section to apply.  Other courts that have considered this argument have come to the same conclusion.  *See United States v. Callahan*, 801 F.3d 606, 617 (6th Cir. 2015) (finding that "§ 1589(a)'s proscription against the exploitation of the labor or services of 'a person' by prohibited means encompasses *any person*, no matter her nationality or place of birth" (emphasis in original)); *Carter v. Paschall Truck Lines, Inc.*, 324 F. Supp. 3d 900, 915 (W.D. Ky. 2018) (same); *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS

(NLS), 2018 WL 2193644, at *5 (S.D. Cal. May 14, 2018) (citing *Callahan* approvingly for the proposition that the *Callahan* court was "unpersuaded by an argument that § 1589 was meant to target those who exploit foreign-born victims because . . . the language of the statue [sic] did not include such a restriction"). The Sixth Circuit further noted in *Callahan* that other sections of the TVPA "imposed limitations on the scope of prohibited conduct and the category of victims, *see, e.g.*, 18 US.C. § 1591 (prohibiting '[s]ex trafficking of children by force, fraud, or coercion'), providing further indication that the unqualified term 'a person' is purposefully broad." 801 F.3d at 617. The Court finds the reasoning of these courts persuasive; the language of the statute simply does not contain the limitations Dickey seeks to impose on it.

The authorities that Dickey cites in support of her arguments do not further her position. In *Headley v. Church of Scientology*, the Ninth Circuit granted summary judgment in favor of the defendants because § 1589 requires that either "serious harm" befall an employee if she did not continue her work or a threat compels her to remain, and "the record show[ed] that the adverse consequences cited by the [plaintiffs were] overwhelmingly not of the type that caused them to continue their work." 687 F.3d 1173, 1180 (9th Cir. 2012). The stage of the case in *Headley* alone makes the case inapposite, and it certainly does not stand for the proposition that § 1589 is limited to transnational crimes. Dickey's reliance on *Mohammed v. Sidecar Technologies Inc.* is also distinguishable; there, the plaintiff alleged that the defendant threatened him with false legal charges if he did not continue working. No. 16 C 2538, 2016 WL 6647946, at *3 (N.D. Ill. Nov. 10, 2016). The court found it implausible that the plaintiff believed that the defendant, a private employer, had the power to or intended to cause criminal proceedings to be initiated against him. *Id.* Here, on the other hand, the Government has alleged in the indictment that Dickey used physical and emotional abuse, isolation from family, and threats of harm to

coerce the victims into following her orders, and a grand jury found probable cause to indict her

for those actions. The fact that Dickey's alleged victims were not immigrants may affect the

weight of the Government's evidence at trial, but it does not preclude the Government from

bringing the charge against her.

Dickey also includes an argument in her motion that "the uncontroverted facts establish

that the alleged victims were free to disassociate with Dickey." She does not provide any

authority to support this argument. This argument is inappropriate for this stage in the

proceedings. A 12(b)(3)(B) motion is not intended to challenge the strength of the

Government's case or the sufficiency of the evidence. *Moore*, 563 F.3d at 586. Rather, the

question is whether it is possible to view the conduct alleged in the indictment as constituting the

crime charged. *Id.* Dickey's arguments here go to the strength of the Government's case, and

the Court will not consider them at this time.

## II.      Free Exercise Clause

Dickey contends that the First Amendment precludes the Government from prosecuting

Dickey for this crime because her conduct "was religiously motivated or protected." Doc. 127

¶ 34 (citing *Headley*, 687 F.3d at 1181). The *Headley* court, however, declined to reach this

issue. *Id.* ("[W]e need not reach the question of whether the ministerial exception would bar a

claim under the Act."). The ministerial exception allows religious organizations "to hire and fire

their ministerial leaders without governmental interference." *Grussgott v. Milwaukee Jewish*

*Day Sch., Inc.*, 882 F.3d 655, 657 (7th Cir. 2018). Dickey cites no other authority to support this

argument, nor does she explain why the ministerial exception would apply to criminal law.

Dickey's argument on this issue is undeveloped, and as such the Court will not consider it. *See*

*Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (holding that a party waives an

argument if it is "underdeveloped, conclusory, or unsupported by law"); *TinleySparks, Inc. v. Vill. Of Tinley Park*, 181 F. Supp. 3d 548, 561 (N.D. Ill. 2015) (same).

## III.    Severance of the Counts

Finally, in the alternative to her motion to dismiss, Dickey requests that the Court sever the forced labor charge from the wire fraud charge.   Rule 14 allows the Court to sever counts if joinder of the counts "appears to prejudice a defendant." Fed. R. Crim. P. 14(a).  The Seventh Circuit describes the Rule 14 standard as "exacting," "because it is not enough for a defendant to show 'that separate trials may have provided him a better opportunity for an acquittal.'" *United States v. Carter*, 695 F.3d 690, 700 (7th Cir. 2012) (quoting *United States v. Calabrese*, 572 F.3d 362, 368 (7th Cir. 2009)).  It is the defendant's burden to establish this prejudice, and "[t]o meet his burden, the defendant must demonstrate that 'there is a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Zheng*, No. 14-cr-424, 2016 WL 7116580, at *2 (N.D. Ill. Dec. 7, 2016) (quoting *Zafiro v. United States*, 506 U.S. 534, 539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993)).

Looking to Dickey's motion, her argument for severance consists of a one-sentence statement that trying the forced labor and wire fraud counts at the same time would be "unduly prejudicial."  Doc. 127 ¶ 32.  She does not explain why trying the counts together would be unduly prejudicial.  Dickey has not carried her burden of establishing that joinder of the counts would cause her "severe prejudice."  *See United States v. Goines*, 988 F.2d 750, 781 (7th Cir. 1993).  And the Court will instruct the jury that they need to consider each charge separately and clarify that the scheme charged in Count One (wire fraud) is different from the scheme charged in Count Four (forced labor).  These instructions should "provide an adequate safeguard against

the risk of prejudice in the form of jury confusion, evidentiary spillover, and cumulation of evidence." *United States v. Peterson*, 823 F.3d 1113, 1124 (7th Cir. 2016). Because the Court finds that Dickey has not carried her burden of establishing that trying the counts together would cause her undue prejudice, the Court denies her request to sever the counts.

## CONCLUSION

For the foregoing reasons, the Court denies Dickey's motion to dismiss [127].


Dated: February 4, 2019

SARA L. ELLIS
United States District Judge